957 So.2d 894 (2007)
Carolyn PATRICK, Individually and on Behalf of Ronnie Joe Patrick, Plaintiff-Appellant
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, City of Monroe, Entergy Louisiana, Inc., Entergy Corporation and George Donald Emfinger, Defendant-Appellee.
Progressive Insurance Company, Defendant-Appellee Intervenor.
No. 42,197-CA.
Court of Appeal of Louisiana, Second Circuit.
May 16, 2007.
Rehearing Denied June 14, 2007.
*895 Curtis D. Street, for Appellant.
Nanci S. Summersgill, for Appellee, City of Monroe.
Michael L. Dubos, Monroe, for Appellee, Entergy Corporation and Entergy Louisiana, Inc.
Walter D. White, Shreveport, for Appellee Progressive Insurance Company.
Before WILLIAMS, PEATROSS and MOORE, JJ.
WILLIAMS, J.
Plaintiff, Carolyn Patrick, individually and as curatrix of her husband, Ronnie Joe Patrick, seeks reversal of the trial court's ruling granting summary judgment in favor of defendants, Entergy Corporation and the City of Monroe, Louisiana. For the reasons that follow, the judgment of the trial court is hereby affirmed.

FACTS
On June 18, 2001, Ronnie Joe Patrick was riding his Honda motor scooter eastbound on Kilpatrick Boulevard in Monroe, Louisiana. At the same time, George Emfinger was driving his Isuzu pickup truck westbound on Kilpatrick Blvd. Emfinger was looking for an office building as he drove, and he decided to make a left turn onto Plaza Boulevard, a street that intersects perpendicularly with Kilpatrick Blvd. When Emfinger turned across the eastbound lane of Kilpatrick Blvd., Patrick's scooter hit the passenger side of Emfinger's *896 truck. Patrick was seriously injured in the crash; his injuries were so severe that they later led to his interdiction.
Kilpatrick Blvd. is a surface street with a speed limit of 25 miles per hour and is divided down the center by a series of curbed oval-shaped islands that are covered in grass. The spaces between the islands are paved in the same manner as the roadway and allow motorists to turn onto the various streets that intersect with Kilpatrick Blvd. A dividing island is located immediately to the west of Kilpatrick Blvd.'s intersection with Plaza Blvd. An electrical box owned and placed by Entergy Corporation is located on the east end of the island. A crepe myrtle tree is on the same island to the west of the electrical box.
Following the accident, plaintiff filed the instant lawsuit, naming as defendants Emfinger, his insurer, State Farm Mutual Automobile Insurance Company ("State Farm"), Entergy Louisiana, Inc., Entergy Corporation (referred to collectively as "Entergy") and the City of Monroe, Louisiana ("the City"). Plaintiff alleged, inter alia, Emfinger was negligent in the operation of his truck; Entergy's electrical box blocked the view of drivers in Emfinger's position; the City should have cut back the trees and vegetation that allegedly blocked the view of drivers on Kilpatrick Blvd.; and the City should not have allowed Entergy to place its electrical box on the island.
Each of the defendants answered the petition and generally denied liability. Entergy and the City both urged that the plaintiff's damages were caused solely by Emfinger's negligence. Discovery commenced; at his deposition, Emfinger placed a portion of the blame for the accident on the electrical box and the vegetation. Emfinger said that he stopped his truck in the intersection ("If I had went any further, I'd have been in the lane,"), did not see anyone, and proceeded on. He explained:
There's a large metal box right at the corner of the boulevard where it separateswhere it turns. And there's a lot of Bradford pear[1] trees down through there and . . . you can see a little bit, and Iwhen I looked there, there was nothing, and then I proceeded to turn.
Emfinger and State Farm settled with the Patricks on February 19, 2003, leaving only the City and Entergy as defendants.
On August 30, 2006, Entergy filed a motion for summary judgment. On September 26, 2006, the City filed a motion for summary judgment relying on Entergy's motion and further urging that it was not negligent in maintaining the trees.
Defendants relied on several pieces of evidence developed during discovery. First, defendants cited the deposition of the Monroe police officer who investigated the accident, Corporal Paul Harper, who concluded that Emfinger was distracted at the time of the accident because Emfinger told Cpl. Harper that he was looking for a street sign at the time he made the turn. Cpl. Harper stated:
I'm not going to sit here and tell youif you're wanting my answer becausethis wreck occurred because of that vegetation and that box, I'm going to say `no' . . . because it didn't. Because when you're down that street thatup to where you actually make your turn and where the crash occurred, he could have seen that motorcycle if he were looking instead of looking for the street sign.

*897 * * *
If you're going to turn at the intersection at this point, you can't see down that street. But if you get up there were you're going to turn, to make your turn, instead of looking for a street sign and not paying attention to oncoming traffic or opposing traffic, you should be able to see down that street. There is no problem.
Cpl. Harper did not request that the City change the intersection because of a visual obstruction.
Defendants also relied in part on statements made by plaintiff's expert, Dr. Louis Bedell,[2] a retired associate professor of physics at University of Louisiana at Monroe. In his deposition, Dr. Bedell testified that drivers traveling in opposite directions on Kilpatrick Blvd. cannot see each other because of the obscuring objects "and it's only when the truck begins to turn that they can see each other." Dr. Bedell stated that a motorist should have been aware of what he called the "vision hazard" and should have slowed down and stopped at the intersection. Dr. Bedell further stated that had Emfinger stopped in the intersection to look at the road to the west of his position, he could have seen 200 feet down the road and neither the box nor the trees would have interfered with his ability to see the oncoming motor scooter.
Defendants further cited the deposition of plaintiff's other expert, John Bates, a civil engineer whose experience includes work as a highway engineer and highway and street designer. Bates testified that the objects in the median created a visual obstruction, that the obstruction was in violation of the applicable highway safety standards, and explained:
If there had been no obstruction in that center median, there is absolutely no reason why a left-turning vehicle would have to stop except to yield to oncoming traffic and to be able to see that oncoming traffic in sufficient distance in order to react properly.
Bates stated that he believed the visual obstruction and Emfinger's failure to yield were the proximate causes of the accident. However, Bates also said that if a motorist in Emfinger's position stopped his vehicle two feet to the north of the island's curb, the motorist would be able to see 220 feet to the west down Kilpatrick Blvd. In his deposition, Emfinger marked the spot where he stopped on a photograph of the intersection, which roughly appeared to be two feet to the north of the island's curb. Bates stated that if Emfinger had stopped at the location he indicated, he should have been able to see Patrick approaching on his motor scooter. Nevertheless, Bates explained:
If the obstructions had not been there for the two hundred twenty feetand by the way, that's the entire length of that short block right there (indicating), that short median. . . . So if there had not been any obstructions there, then before he ever got to the point shown in Emfinger # 2, [Mr. Emfinger] would have been able to have either slowed . . . in order to allow clearance of the Patrick vehicle or to come to a stop anywhere along that path of his turn in that intersection if that became necessary. But because there was an obstruction that cannot be seen until he gets up to the point or very close to the point that he showed in Emfinger # 2, then a vehicle would have to stop at that location in order to see that he had adequate clearance.
*898 Bates considered Emfinger's testimony that he stopped in the intersection "a violation of the physical evidence" because Emfinger should have been able to see Patrick approaching if Emfinger stopped where Emfinger said he stopped. Nevertheless, Bates maintained that a motorist in Emfinger's position had no obligation to stop but for the visual obstruction created by the objects in the median.
The City also supplied the affidavit of Richard Jones, supervisor of the Administrative Services Bureau. Jones stated that there had only been two accidents at the intersection in question in the previous five years. One of those accidents was the instant accident. In the other accident, a motorist backing onto Kilpatrick Blvd. struck another vehicle in the lane the motorist was backing into; the accident did not involve a left-turn at the island.
In response to the motions for summary judgment, plaintiff filed an opposition and also relied on the depositions of Emfinger, Harper, Bedell and Bates. Further, plaintiff supplied the court with affidavits from three other personsDale Kelley, Jane Jackson and Debbie Skeen. Kelley is a photographer who took a variety of photos of the site for reference purpose; the photos were attached to his affidavit. Jackson and Skeen work at offices located adjacent to Kilpatrick Blvd., and both of their affidavits state that the electrical box and trees on the Plaza intersection island block the view of a left-turning motorist on Kilpatrick Blvd. and that they consider the condition hazardous.
Entergy filed a reply to the opposition, including a section from the deposition of another engineer, Kirk Gallien. Gallien testified nothing in the applicable standards prevented the placement of the trees or electrical box in the median.
On October 26, 2006, the trial court granted summary judgment in favor of the City and Entergy. The court concluded that the evidence showed that neither the electrical box nor the trees prevented a motorist exercising ordinary care and reasonable prudence from seeing a clear view of the intersection and approaching traffic. From that judgment, plaintiff now appeals.

DISCUSSION
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action and the procedure is favored and shall be construed to accomplish these ends. LSA-C.C.P. art. 966(A)(2). Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. 966(B). The burden of proof remains with the movant; however, if the movant will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, then the movant may merely point out to the court that there is an absence of factual support for one or more elements essential to the plaintiff's claim. The burden then shifts to the non-moving party to present evidence demonstrating that genuine issues of material fact remain. LSA-C.C.P. art. 966(C)(2); Racine v. Moon's Towing, 2001-2837 (La.5/14/02), 817 So.2d 21. Once the burden of production has shifted, the opponent must produce factual support to avert the summary judgment. If the opponent fails to produce such evidence, summary judgment is mandated. LSA-C.C.P. art. 966(C)(2); Racine, supra. Appellate review of the grant or denial of summary judgment is de novo. Ross v. Conoco, Inc., XXXX-XXXX (La.10/15/02), 828 So.2d 546.
*899 Unquestionably, Emfinger violated his duty as a left-turning motorist to exercise due care. As this court stated in Thomas v. Petrolane Gas Serv. Ltd. Part., 588 So.2d 711 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1201 (La.1992):
A vehicle driver intending to turn left within an intersection shall yield to oncoming traffic that is "within the intersection or so close thereto as to constitute an immediate hazard." Further, the left turn has been held to be the most dangerous maneuver a motorist may execute, and great caution should always be taken. Obviously, such a turn should be attempted only when it is ascertained that it can be safely completed.
Individual drivers additionally have a duty to operate, control, and use their automobiles reasonably, and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm.
Id. at 717 (internal citations omitted).
In the instant case, Emfinger should have seen the oncoming motor scooter and yielded the right of way to Patrick. However, at issue here is whether either or both Entergy and the City of Monroe share in the fault for the accident. LSA-C.C. art. 2323.
In Fowler v. Roberts, 556 So.2d 1 (La. 1989), the supreme court explained:
The determination of liability in a negligence case usually requires proof of five separate elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) proof of actual damages (the damages element).
Both the City and Entergy had duties in this case. The city has a duty to maintain its streets and rights of way in a reasonably safe condition for use by the public. Lutz v. City of Shreveport, 25,801 (La.App.2d Cir.5/4/94), 637 So.2d 636, writ denied, 94-1487 (La.9/23/94), 642 So.2d 1294. Overgrown foliage that obstructs the right of way may constitute a defect in the road. Briggs v. Hartford Ins. Co., 532 So.2d 1154 (La.1988). See also LSA-R.S. 48:35(C) relative to the duty of the City to maintain the road in a manner that is not unreasonably dangerous for a reasonably prudent driver, and LSA-R.S. 9:2800 relative to proof of notice prior to imposition of strict liability upon public entities. Likewise, Entergy had the duty not to place its equipment in a manner that would pose an unreasonable risk of harm to motorists.
Photographs, expert testimony and other evidence revealed that both the electrical box and the vegetation on the Kilpatrick Blvd. island partially blocked westbound motorists from seeing eastbound motorists approaching the Plaza intersection. Only when left-turning westbound motorists slowed to a stop in the intersection could they obtain a view of the eastbound lane sufficient to permit the safe completion of a left turn onto Plaza. There is no traffic control device at the intersection; the left-turning motorist must observe the condition for himself and take the appropriate action, i.e., stop in the intersection and look for oncoming traffic, before proceeding. This is, at least, an atypical condition at an intersection, and at least one of the plaintiff's experts was of the opinion that the intersection was unreasonably dangerous *900 because of the blocked views. Plaintiff's proof on this element was sufficient to overcome summary judgment.
Cause-in-fact is generally a "but for" inquiry, which tests whether the accident would or would not have occurred but for the defendant's substandard conduct. Fowler, supra. In Bonin v. Ferrellgas, Inc., XXXX-XXXX (La.7/2/04), 877 So.2d 89, the supreme court analyzed a case where more than one party's conduct was responsible for the harm (a fire). The court stated:
However, where there are concurrent causes of an accident, the proper inquiry is whether the conduct in question was a substantial factor in bringing about the accident. In this case, more than one party's conduct allegedly caused the fire, i.e., Ferrellgas, Empiregas, and Lanclos. In considering the substantial factor test, this Court has stated that cause-in-fact clearly exists when the plaintiff's harm would not have occurred absent the specific defendant's conduct. This Court has considered "whether each of the multiple causes played so important a role in producing the result that responsibility should be imposed upon each item of conduct, even if it cannot be said definitively that the harm would not have occurred `but for' each individual cause." Also considered is "whether the actor's conduct has created a force or series of forces which are in continuous and active operation up to the time of the harm." Whether the defendant's conduct was a substantial factor in bringing about the harm, and thus, a cause-in-fact of the injuries, is a factual question to be determined by the fact finder.
Id. at 94 (internal citations omitted).
With regard to the cause-in-fact element, the defendants clearly satisfied their initial burden of showing an absence of factual support for the plaintiff's case. No witness testified that the vegetation or electrical box prevented Emfinger from seeing Patrick at the point in the intersection where Emfinger said that he stopped. Plaintiffs' own experts opined that Emfinger's view down the eastbound lane of Kilpatrick Blvd. was at least 200 feet, long enough at the low speeds involved for Emfinger to make his turn safely.
The question then becomes whether the plaintiff has evidence demonstrating that genuine issues of material fact remain on this point. Emfinger's undisputed testimony is that he stopped in the intersection to look for oncoming trafficand saw nonebefore entering the eastbound lane. Emfinger's actionstopping and looking for oncoming trafficnullifies any harm that was caused by the blockage of the view by the trees or the electrical box. Emfinger recognized the hazard posed by the intersection and took the appropriate action by stopping and looking. At that point, the hazard posed by the items blocking his view had passed because the electrical box and trees did not prevent him from seeing Patrick. Emfinger simply failed to see what he should have seen and negligently entered the intersection.
Although the cause-in-fact inquiry is a factual determination best made by the fact-finder, summary judgment may be appropriate when, as here, there is no evidence to show that the defendants' negligence caused the plaintiffs' injuries. See, e.g., Williamson v. Monroe Medical Clinic, 37,463 (La.App.2d Cir.8/20/03), 852 So.2d 1192. There is no evidence to support a finding that the condition created by the electrical box and trees was a substantial factor in bringing about this accident; credibility determinations are not at issue here.

*901 CONCLUSION
The evidence in this case shows that the sole cause of Patrick's crash was Emfinger's failure to see Patrick, despite his unrestricted opportunity to do so. Accordingly, the judgment of the district court is affirmed at appellant's cost.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, PEATROSS, DREW, and MOORE, JJ.
Rehearing denied.
NOTES
[1] The tree on this island appears to be a crepe myrtle.
[2] Only a portion of Dr. Bedell's deposition is included in the record on appeal; the deposition is partly included as an exhibit and partly incorporated into the record itself.