WILLIAMS, J.
 

 |, Plaintiff in intervention, Donald Gar-see, appeals the district court’s ruling granting summary judgment in favor of defendants, Kizzy Whitaker and State Farm Mutual Auto Insurance Company (“State Farm”). For the reasons that follow, we affirm the district court’s judgment.
 

 FACTS
 

 On March 10, 2006, at approximately 7:25 a.m., a multi-vehicle accident occurred on the three-lane portion of Interstate 49 in Caddo Parish. The vehicles involved were driven by Bruce Stone (the original plaintiff) and defendants, Hannah Bullard, Brandi Mooney and Kizzy Whitaker. The defendants were all insured by State
 
 *1243
 
 Farm. Garsee was a guest passenger in the vehicle driven by Stone.
 

 Stone filed a petition for damages, alleging that the accident was caused by the negligence of Bullard and Mooney, and named State Farm as a defendant. Gar-see, who sustained serious injuries when he was ejected from Stone’s vehicle, intervened in the lawsuit, naming State Farm, Mooney, Bullard and Whitaker as defendants.
 
 [1]
 
 Garsee alleged that Whitaker was “following the preceding traffic too closely and traveling at an unsafe speed,” causing a collision with Bullard’s vehicle. Garsee alleged that the collision forced the vehicles driven by Bullard and Whitaker into the lane of travel occupied by Stone’s vehicle, which, in turn, forced Stone into Mooney’s lane of travel. Garsee further alleged that Stone’s vehicle was struck by Mooney’s vehicle, causing Stone to lose control of his vehicle.
 

 Instate Farm paid the limits of their policies to Garsee on behalf of Mooney and Bullard. The suit progressed with Whitaker and State Farm as defendants.
 

 Multiple depositions were introduced into evidence.
 
 [2]
 
 In his deposition, Stone testified that on the day of the accident, he was traveling on Interstate 49 in the center lane when he noticed a green sports utility vehicle (“SUV”) “acting erratically on the inside lane.” Stone stated that another vehicle, not the SUV, collided with his vehicle, forcing his vehicle into the retaining wall along the interstate. He testified that after striking the wall, his vehicle rebounded off the wall, rotated to the left and “started rolling” along the interstate before coming to a stop. Stone stated that he could not recall whether his vehicle made contact with any other vehicle after the initial collision with Mooney. Stone stated, “[I] know that the lady lost control, and she definitely hit somebody that definitely hit me.” He specifically testified that he had no personal knowledge of whether Whitaker’s vehicle came into contact with any vehicle.
 

 Bullard testified that she was driving in the far left lane of the interstate when the drivers of the vehicles traveling in front of her began applying their brakes. Bullard stated that she applied her brakes and veered to the left in an attempt to avoid a collision with the vehicle in front of her. At that point, her vehicle was struck from behind by the vehicle driven by Mooney and began to spin out of control, ultimately crossing two lanes ofjjtravel before coming to a rest in the far right lane. Bullard initially testified that she did not recall her vehicle striking another vehicle while it was spinning, but she “realize[d] that it may be a possibility.” Later in her deposition, Bullard testified that she “believed” she hit the front of Whitaker’s vehicle when her vehicle started to spin. Bullard recalled seeing Whitaker’s vehicle traveling in the lane to the right of her prior to the collision, but she did not recall striking Whitaker’s vehicle.
 

 Mooney testified that she was traveling in the far left lane behind Bullard’s vehicle. She stated that Bullard applied her brakes, swerved, regained control of her vehicle, and applied her brakes again. Mooney testified that Bullard then began to spin out of control, causing Mooney to collide with Bullard’s vehicle. Mooney’s vehicle then entered the center lane and
 
 *1244
 
 collided with Stone’s vehicle. Mooney testified that her vehicle did not collide with Whitaker’s vehicle and she did not witness the subsequent collision between the vehicles driven by Bullard and Whitaker. Mooney further testified that her vehicle made impact with two vehicles — those driven by Bullard and Stone — before spinning out of control and striking the outside retaining wall and coming to a rest.
 

 Whitaker testified that she was traveling in the center lane, next to the vehicle driven by Bullard.
 
 [3]
 
 She stated that Bul-lard’s vehicle struck the front driver’s side of her vehicle. When describing the collision, Whitaker stated, “I don’t know if she [Bullard] started swerving or anything. It happened so |4fast until I was like, ‘Oh, she just hit me.’ ” Whitaker testified that after the impact, she came to a stop and did not collide with any other vehicles. She stated that at the time of her collision, she was not aware that Mooney and Stone had been involved in the same accident.
 

 Officer Steve Hathorn responded to the accident. During his deposition, Officer Hathorn read from his accident report as follows:
 

 [Stone] said that he was North on 1-49 when [Bullard’s vehicle] that was in front of him started to sway back and forth. [Stone] stated that when he tried to miss [Bullard’s vehicle] by changing lanes, he was struck by [Mooney’s vehicle] on the driver’s side of his truck causing his truck to roll — to roll, throwing his passenger out of the truck. [Bullard] said a truck and car in front of her started to hit their brakes. [Bul-lard] stated when she started to hit her brakes, her vehicle started to sway back and forth, causing her vehicle to start to spin. [Bullard] stated she blacked out and can’t remember what else happened .... [Whitaker] stated she was Northbound on 1-49 when [Bullard’s vehicle] started to spin, striking the front driver’s side of her truck. [Whitaker] did not see any other part of the accident.
 

 John Ella Wilkerson, who was not involved in the accident, testified that she witnessed the collision between the vehicles driven by Whitaker and Bullard. Wilkerson testified that she was driving directly behind Whitaker’s vehicle on the morning of the accident, when “all of a sudden people start[ed] slamming on their brakes.” She stated that she saw Bullard apply her brakes before her vehicle began to spin and that she saw Bullard’s vehicle strike the vehicle driven by Whitaker. Wilkerson stated that she did not see the other collisions; she only witnessed the collision between the vehicles driven by Bullard and Whitaker.
 

 Whitaker and State Farm moved for summary judgment, contending [ sWhitaker was not liable for causing the accident which resulted in Garsee’s injuries. The district court granted summary judgment, stating, “There apparently is confusion as to how the accident occurred but nobody has been able to pin any liability on Ms. Whitaker.” This appeal followed.
 

 DISCUSSION
 

 Garsee contends the district court erred in granting summary judgment in favor of Whitaker and State Farm. He argues that each driver provided conflicting versions of the accident; therefore, genuine issues of material fact existed with regard to whether Whitaker was at fault.
 

 
 *1245
 
 In determining whether summary judgment is appropriate, appellate courts are to review summary judgments
 
 de novo
 
 under the same criteria that govern the district court’s consideration of whether summary judgment is proper.
 
 Suire v. Lafayette City-Parish Consolidated Government,
 
 2004-1459 (La.4/12/05), 907 So.2d 37. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action and shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(A)(2) and (B).
 

 The burden of proof remains with the movant. LSA-C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather |fito point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense.
 
 Id.
 
 Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
 
 Id.
 

 When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him. LSA-C.C.P. art. 967(B).
 

 In a civil suit, the burden is on the plaintiff to prove the negligence of the defendant by a preponderance of the evidence.
 
 Miller v. Leonard,
 
 588 So.2d 79 (La.1991);
 
 Hughes v. Scottsdale Ins. Co.,
 
 35,043 (La.App.2d Cir.8/22/01), 793 So.2d 537;
 
 Silva v. Calk,
 
 30,085 (La.App.2d Cir.12/10/97), 708 So.2d 418. Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis, which entails five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) whether the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) whether the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) whether the defendant’s substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) whether the plaintiff was l7damaged (the damages element).
 
 Hanks v. Entergy Corp.,
 
 2006-477 (La.12/18/06), 944 So.2d 564;
 
 Lemann v. Essen Lane Daiquiris, Inc.,
 
 2005-1095 (La.3/10/06), 923 So.2d 627.
 

 Individual drivers have a duty to operate, control and use their automobiles reasonably, and to maintain a proper lookout for hazards which might pose an unreasonable risk of harm.
 
 Patrick v. State Farm Mut. Auto. Ins. Co.,
 
 42,197 (La.App.2d Cir.5/16/07), 957 So.2d 894,
 
 writ denied,
 
 2007-1452 (La.10/12/07, 965 So.2d 400);
 
 McElroy v. Wilhite,
 
 39,393 (La.App.2d Cir.5/18/05), 903 So.2d 627. The duty of a following motorist is governed by LSA-R.S. 32:81(A), which provides:
 

 A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable having due regard for
 
 *1246
 
 the speed of such vehicle and the traffic upon and the condition of the highway.
 

 A driver has a duty not to drive at a speed greater than is reasonable and prudent under the then existing conditions and potential hazards, having due regard for the surface of the roadway among other things. LSA-R.S. 32:64(A);
 
 Richardson v. Aldridge,
 
 37,192 (La.App.2d Cir.5/16/03), 854 So.2d 923;
 
 Guy v. State, Dept. Of Transp. & Dev.,
 
 576 So.2d 122 (La.App. 2d Cir.1991),
 
 writ denied,
 
 580 So.2d 911 (La.1991). A presumption of negligence arises when a driver leaves his own lane of travel and strikes another vehicle. In such a case, the defendant motorist has the burden of proving that he was not guilty of any dereliction, however slight.
 
 Shephard on Behalf of Shephard v. Scheeler,
 
 96-1690 (La.10/21/97), 701 So.2d 1308;
 
 Richardson, supra.
 

 In the instant case, as noted above, Garsee alleged that Whitaker Rcaused or contributed to the accident by “following the preceding traffic too closely and traveling at an unsafe speed.” Garsee also alleged that Whitaker caused the collision between her vehicle and Bullard’s vehicle, forcing those vehicles into Stone’s lane of travel, which, in turn, forced Stone into Mooney’s lane of travel. To support his argument, Garsee points to the deposition testimony of Bullard in which she stated that she did not remember leaving her lane of travel; therefore, Garsee contends that Whitaker’s vehicle must have entered Bullard’s lane, causing the collision between the other vehicles.
 

 The record is deplete of any evidence to support Garsee’s contention that Whitaker left her lane of travel, causing or contributing to the collision between Mooney’s vehicle and the vehicle in which Garsee was a passenger. The testimony showed that Bullard braked suddenly, was struck from behind by Mooney’s vehicle, then began spinning out of control, crossing other lanes of travel. During her statement to the police and in her deposition, Bullard stated that she did not recall what happened after her vehicle began to spin. However, during her deposition, Bullard admitted that she could not disagree with Whitaker’s version of the accident. Bul-lard testified that she “believed” her vehicle made impact with Whitaker’s vehicle when she began to spin out of control. Whitaker and Wilkerson both testified unequivocally that Bullard’s vehicle struck the front of Whitaker’s vehicle and that Whitaker did not leave her lane of travel prior to the collision.
 

 After reviewing the record in its entirety, we find that Garsee failed to | flmeet his burden of proving that Whitaker caused or contributed to the accident. Thus, there was no genuine issue of material fact. Accordingly, summary judgment was proper.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the district court’s grant of summary judgment in favor of defendants, Kizzy Whitaker and State Farm. Costs of this appeal are assessed to plaintiff in intervention, Donald Garsee.
 

 AFFIRMED.
 

 [1]
 

 . Garsee also named Ford Motor Company as a defendant. However, the alleged liability of Ford Motor Company is not at issue in this appeal.
 

 [2]
 

 . In his deposition, Garsee testified that he had no independent recollection of the day of the accident. He stated that he suffered multiple injuries and was hospitalized for over a month.
 

 [3]
 

 . Both Stone and Whitaker testified that they were traveling in the center lane. It is unclear from the testimony where Whitaker's vehicle was in relation to Stone’s vehicle. However, it is apparent that the collision between Bullard and Whitaker occurred after the Stone/Mooney and Bullard/Mooney collisions.