WILLIAMS, J.
 

 | defendants, Antonia Martez Smith and the City of Shreveport, appeal a trial court’s judgment, finding that Smith and plaintiff, Stacy Renee Owen, were both at fault in causing an automobile collision. The trial court allocated 75% fault to Smith and 25% fault to plaintiff. For the reasons that follow, we affirm.
 

 FACTS
 

 On April 23, 2002, a vehicle being driven by plaintiff, Stacy Renee Owen, collided with a garbage truck, which was owned by the City of Shreveport (“the City”) and operated by Antonia Martez Smith. Plaintiff was traveling north on Hearne Avenue in Shreveport, Louisiana; Smith was traveling west on Marquette Street. Plaintiff alleged that Smith disobeyed the red traffic signal at the intersection of Hearne and Marquette; Smith claimed that plaintiff ran the red light.
 
 [1]
 

 After a bifurcated bench trial with regard to the issue of liability, the trial court found that both plaintiff and Smith were at fault. The court stated:
 

 The crux of the case is who had the green light. Both claim it. The plaintiff doesn’t remember. She suffered some head trauma in the accident we note. There is an independent witness who unequivocally says that the plaintiff had the green light.
 

 
 *1276
 
 [[Image here]]
 

 We think it’s clear at the time of the accident the plaintiff wasn’t paying a lot of attention.... Of course her lack of memory is explainable by the head injury.
 

 The truck driver seems equally credible and he says that he had the green light. It’s difficult to break these kinds [of] “ties” ... if you will.
 

 |2But we think predominantly based on the testimony of the independent witness that the evidence narrowly preponderates that the plaintiff had the green light. The independent witness’ demeanor impresses us, and nothing about her impressed us negatively.
 

 However, we would be remiss if we didn’t add that the point of impact and the nature of the impact indicate that the plaintiff was partly at fault for not paying attention. We think if she had been paying attention that perhaps this accident could have been avoided to some extent, or maybe not as quite as traumatic.
 

 The court then allocated 25% fault to plaintiff and 75% fault to Smith. Smith and the City appeal.
 

 DISCUSSION
 

 Defendants contend the trial court committed legal error by failing to require plaintiff to prove her case by a preponderance of the evidence. Defendants argue that since the court found that Smith was an “equally credible” witness, then the evidence was evenly balanced and plaintiff did not prove her case by a preponderance of the evidence.
 

 The burden is on the plaintiff to prove the negligence of the defendant by a preponderance of the evidence.
 
 Miller v. Leonard,
 
 588 So.2d 79 (La.1991);
 
 Stone v. Bullard,
 
 43,996 (La.App. 2d Cir.1/28/09), 2 So.3d 1241;
 
 Hughes v. Scottsdale Ins. Co.,
 
 35,043 (La.App. 2d Cir.8/22/01), 793 So.2d 537. Proof is sufficient to constitute a preponderance when the entirety of the evidence, both direct and circumstantial, shows the fact sought to be proved is more probable than not.
 
 Cangelosi v. Our Lady of the Lake Regional Med. Ctr.,
 
 564 So.2d 654 (La.1989).
 

 Under Louisiana jurisprudence, most negligence cases are resolved by employing a duty/risk analysis. The particular facts and circumstances of |8each individual case determine the extent of the duty and the resulting degree of care necessary to fulfill that duty.
 
 Comier v. T.H.E. Ins. Co.,
 
 98-2208 (La.9/8/99), 745 So.2d 1. A plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached.
 
 Id.; Berry v. State, Dept. Of Health and Human Resources,
 
 93-2748 (La.5/23/94), 637 So.2d 412.
 

 Causation is a question of fact, and is, therefore, subject to the manifest error standard of review.
 
 Green v. K-Mart Corp.,
 
 2003-2495 (La.5/25/04), 874 So.2d 838;
 
 Mart v. Hill,
 
 505 So.2d 1120 (La.1987). Under the manifest error standard, in order to reverse a trial court’s determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.
 
 Stobart v. State, Dept. of Transp. & Dev.,
 
 617 So.2d 880 (La.1993).
 

 On review, an appellate court must be cautious not to reweigh the evi
 
 *1277
 
 dence or to substitute its own factual findings just because it would have decided the case differently.
 
 Ambrose v. New Orleans Police Dept. Ambulance Service,
 
 93-3099 (La.7/5/94), 639 So.2d 216. A reviewing court must give great weight to factual findings of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even |4though the appellate court may feel that its own evaluations and inferences are as reasonable.
 
 Id.
 
 The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
 
 Id.
 

 LSA-R.S. 32:232 provides, in pertinent part:
 

 Whenever traffic is controlled by traffic-control signals exhibiting colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
 

 [[Image here]]
 

 (3) Steady RED indication:
 

 (a) Vehicular traffic facing a steady circular red signal shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication to proceed is shown....
 

 A vehicle facing a green circular signal may proceed through the intersection but “shall yield the right-of-way to other vehicles ... lawfully within the intersection ... at the time such signal is exhibited.” LSA-R.S. 32:232(l)(a). A motorist favored with a green signal when approaching an intersection cannot depend exclusively on the favorable light. Rather, the motorist has a duty to watch for vehicles already in the intersection when the light changed; this duty does not extend to looking for traffic that has not yet entered the intersection.
 
 Lewis v. Smith,
 
 40,590 (La.App. 2d Cir.1/25/06), 920 So.2d 920, citing
 
 Hampton v. Marino,
 
 97-1345 (La.App. 1st Cir.11/6/98), 725 So.2d 503.
 

 In the instant case, defendants contend plaintiff failed to meet her burden of proving causation,
 
 ie.,
 
 that any alleged action or inaction on the part of Smith was a cause-in-fact of the accident. Thus, this matter will be reviewed under the manifest error standard.
 

 During the trial, the court heard the testimony of live witnesses and reviewed the depositions of two witnesses who were unavailable to testify. Sergeant C.L. Lindsey of the Shreveport Police Department was the primary investigator of the accident.
 
 [2]
 
 He testified that he interviewed plaintiff at the scene of the accident as the fire department was attending to her injuries. Sgt. Lindsey stated that plaintiff told him “she didn’t remember what happened ... [and] she wasn’t sure what color the lights were.... ” Sgt. Lindsey also stated that he could tell that plaintiff had sustained an injury to her head because she had “hit the windshield” and incurred some lacerations to her forehead. Sgt. Lindsey’s testimony continued as follows:
 

 
 *1278
 
 Q: [D]id she appear in any distress?
 

 A: Yes. You know, with the injuries and having a wreck, yes, I would say so.
 

 Q: [Do] you think there was anything that prevented her from recalling, or do you believe that her statement that she did not recall was a positive statement of her recollection of the events?
 

 A: Well, she just said she didn’t know what color the light was.... I know she hit the windshield, so I don’t know.
 

 On cross-examination, Sgt. Lindsey testified that plaintiff “answered clearly | (ithat she just — she wasn’t aware what color the light was.” He also testified that Smith told him that his traffic signal was green when he proceeded through the intersection. Sgt. Lindsey stated that the traffic signal was functioning properly at the time of the accident; therefore, if the signal was green for the northbound traffic (Hearne Avenue), then the traffic signal controlling the westbound traffic (Marquette Street) would have been red.
 

 Corporal David Walls of the Shreveport Police Department also investigated the accident and prepared a traffic report. Cpl. Walls testified that he did not speak to plaintiff at the scene, nor did he tend to her injuries. He also stated that he did not interview Smith. Rather, he gave Smith a blank form to write his statement and to complete a diagram. Cpl. Walls opined that plaintiff caused the accident, basing his opinion on the location of the damage to the vehicles.
 

 Plaintiff testified that the traffic signal facing her was red when she approached the intersection, and there were at least two vehicles in front of her. She stated that when the light turned green, she followed the other vehicles into the intersection. The collision occurred as she entered the intersection. Plaintiff testified that she did not recall seeing the city truck prior to the collision. Plaintiff denied speaking to Sgt. Lindsey at the scene of the accident. She testified that an officer approached her vehicle and asked her questions with regard to the towing of her vehicle. Plaintiff recalled handing the officer her purse so he could retrieve her driver’s license. Plaintiff also testified that she pleaded with the officer to help her because she was injured, and she reiterated that she did not make any 17statements with regard to the color of the traffic signal.
 

 Smith testified that the traffic signal facing him was green as he approached the intersection. Smith testified as follows:
 

 I was coming, my light was green and I was coming to make a left-hand turn and get on Mansfield Road. The car, [plaintiffs vehicle], is coming ... from my left — my blind side.... My light was green and I seen [sic] the car was coming and it seemed like it didn’t stomp on the brakes or anything. And at that time I was driving the truck, I ha[d] air brakes. I seen [sic] the car coming I was half way — almost half way out in the curve making a turn when this car was coming. The car was in the right-hand lane. At the time I couldn’t just slam on my brakes because if I slam on the brakes the debris would be everywhere. So I was trying to stop the truck, and when I get [sic] like halfway the ear hit me, bounced away, did like a degree angle and ended up in the left-hand lane.
 

 Constance Owens Foster testified that she witnessed the accident.
 
 [3]
 
 Foster testified that she was two cars behind plaintiff
 
 *1279
 
 at the time of the accident. She stated that several vehicles were stopped at the traffic signal, which was red when she approached. Foster testified that the light turned green, and the vehicle in front of plaintiffs traveled through the intersection. Foster also testified that plaintiffs vehicle was struck by the garbage truck as it entered the intersection. Foster unequivocally stated, “The Shreveport garbage truck ran the red light.... ” Foster also stated that she remained at the scene following the accident, but the police officer “didn’t ask me anything, and I didn’t ... volunteer anything to him.” She testified that she followed the ambulance that transported plaintiff to the hospital and talked to plaintiffs boyfriend, “Jason.” Foster testified that she | agave “Jason” a note with the statement, “I saw the accident” and included her name and telephone number. Foster stated that plaintiff contacted her approximately one year after the accident, when plaintiff discovered the note in Jason’s wallet.
 

 After reviewing the record in its entirety, we find that a reasonable factual basis exists for the trial court’s conclusion that plaintiff proved, by a preponderance of the evidence, that Smith disobeyed the traffic signal. Both plaintiff and Smith testified that the traffic signal facing them was green when they entered the intersection. The trial court noted the testimony of plaintiff and Smith and concluded that Smith “seem[ed] equally credible,” as, presumably, plaintiff. The court also found that plaintiff was not as attentive as she should have been. Foster, the only independent witness to the accident, testified that plaintiffs traffic signal was green when plaintiff entered the intersection. The court specifically stated that it was impressed with Foster’s testimony. Defendants’ argument that the evidence was “equally” balanced is not supported by this record. The trial court concluded that, based on Foster’s testimony, the “evidence narrowly preponderates that the plaintiff had the green light.” We find no error in the court’s conclusion, and we find no manifest error in the trial court’s finding that Smith was 75% at fault in causing the accident.
 

 CONCLUSION
 

 For the reasons set forth herein, we affirm the judgment of the trial court on this liability portion of the bifurcated trial, finding defendants, | <)Antonia Martez Smith and the City of Shreveport, 75% at fault in causing the accident.
 

 AFFIRMED.
 

 [1]
 

 . Plaintiff, who was pregnant at the time of the accident, suffered multiple injuries, in-eluding a head injury and fractures of her pelvis, ankle and wrist.
 

 [2]
 

 . Sgt. Lindsey was unavailable to testify at the trial. His deposition was admitted into evidence.
 

 [3]
 

 . Foster was unavailable to testify during the trial. Plaintiffs introduced her videotaped deposition into evidence,