WEIMER, Justice.
|! This court granted a writ application to determine whether a school board has tort liability for expelling a high school student after a fifth-sized bottle of whiskey fell from the student’s backpack and broke on the classroom floor. The student claimed he was denied due process in the disciplinary proceedings that resulted in his expulsion. The district court agreed and awarded the student $50,000.
At trial, the student presented evidence that school system administrators ignored a claim of responsibility by the student’s friend for placing the whiskey bottle in the student’s backpack. Ultimately, the student was not expelled by these administrators, but by the full school board after a hearing at which the student presented all the evidence he wanted considered, including the claim of responsibility by his friend. At trial, the student presented no evidence whatsoever of being denied due process at the school board hearing. Finding the student failed to carry his 12burden of proof to show a denial of due process by the school board, we reverse the judgment of the district court.
FACTUAL AND PROCEDURAL BACKGROUND
Justin Christy was a senior at Captain Shreve High School in Shreveport. On the morning of Monday, October 6, 2003, Justin drove to school after having spent much of the weekend at the home of his friend, Andrew Heacock. Justin brought his backpack into his first period classroom. Accounts vary as to what happened next. By one account, Justin opened his backpack, and a fifth-sized whiskey bottle[1] fell out and broke on the classroom floor. By another account, Justin had retrieved an assignment from his backpack and had left his desk and was walking to bring the assignment to his teacher when the bottle rolled out of his bag onto the floor and broke.
By all accounts, after the bottle broke, Justin was referred to the school’s disciplinary administrator, Marvin Hite, who, along with a police officer regularly assigned to the school, separately interviewed Justin. In both interviews, Justin claimed that he did not know the bottle was in his backpack and did not know how it had come to be there. At the close of the interviews, Justin was arrested by the officer. Justin was released from custody that same day with a citation for possessing alcohol while under the lawful age for possession.
*296 A short time after Justin’s arrest, his friend, Andrew Heacock, who was the school’s Student Council President, came forward and explained to school officials that the bottle belonged to him (Andrew). Andrew also explained that he had put the bottle in Justin’s backpack without telling Justin.
|sWithin the school system, several procedural steps followed. First, on October 10, 2003, Mr. Hite, as well as a school district’s supervisor for child welfare and attendance, Larry Anderson, held an informal hearing with Justin and his parents. At the conclusion of the hearing, Mr. Anderson recommended that Justin be expelled from Captain Shreve. Mr. Anderson further determined that Justin would be placed at Hamilton Terrace Learning Center, an alternative school, until March 12, 2004.
Next, because Justin and his parents contested Mr. Anderson’s expulsion recommendation, the school system conducted a preliminary appeal hearing on October 24, 2003. This hearing was conducted by an appeals committee and not by the full Cad-do Parish School Board (School Board). The appeals committee was convened by Diane Watkins Atkins, the director of the School Board’s Attendance and Census Department, and was comprised of Ms. Atkins and six other school system administrators. After the hearing, the committee recommended to the School Board that Justin be expelled. However, the committee noted that it had reduced the duration of the expulsion (to end December 19, 2003, rather than March 12, 2004), because the “[parents] did not know that they could call witnesses” and a “[w]itness had asked the administration to come to the hearing prior to it being scheduled.” This witness was Andrew Heacock.
After the determination by the appeals committee, the full School Board then took up the matter and held a hearing on November 18, 2003. At the request of Justin’s parents, the hearing was conducted as an “executive session” which is closed to the public. No transcript was made of the School Board’s hearing. However, Justin would later testify at the tort trial that during the School Board’s hearing, he presented his full defense to the school’s allegations, including testifying himself and calling his friend, Andrew Heacock, who testified that he (Andrew) was responsible |4for the whiskey bottle making its way into Justin’s backpack. At the tort trial, Andrew testified that a School Board member expressed disbelief of Andrew’s overall claim of responsibility for the whiskey bottle and, more specifically, disbelieved the claim that Justin was unaware that the bottle was in his backpack. By a vote of 9-2, the School Board voted to expel Justin.[2]
From the day of the whiskey-bottle incident, Justin was prohibited from attending Captain Shreve and was instead assigned to the alternative school. However, the alternative school did not provide the college preparatory courses in which Justin had been enrolled at Captain Shreve. Rather than remain at the alternative school, Justin elected to obtain his General Educational Development Certificate/Credential.
Although another avenue for an appeal to a district court existed under La. R.S. 17:416(0(5),[3] Justin and his parents did *297 not appeal the School Board’s expulsion decision. Instead, on February 10, 2004, Justin’s mother, on her own and on Justin’s behalf, filed a lawsuit against the School Board, alleging that it violated Justin’s right to due process and imposed an “excessive and irrational punishment.” Justin and his mother also alleged that the School Board’s action caused “extreme mental anguish and distress, grief, humiliation and inconvenience.” Notably, Justin and his mother claimed that the disciplinary process was tainted because the school system had [^prevented Andrew from explaining that he, not Justin, was responsible for the whiskey bottle being placed in the backpack.
The lawsuit also named Dr. Sandra McCalla, the school’s principal, as a defendant. However, prior to trial, the School Board sought and obtained Justin’s consent[4] to dismiss Dr. McCalla as a defendant.
Following a bench trial, the district court ruled in Justin’s favor. The district court awarded Justin $50,000, finding that Captain Shreve’s disciplinary administrator, Mr. Hite, had failed to present the full version of events known to him about the whiskey bottle and “in some short order there was sufficient evidence to stop the prosecution of Mr. [Justin] Christy.” The district court explained that “Mr. Hite, the Court believes, commenced a series of actions that effectively concealed the true subject of his conversation early on with Mr. [Andrew] Heacock.” The district court also explained that “Mr. Hite ... rather than bring all the evidence forward, commenced a [series] of actions that helped conceal the evidence or at least mischaracterized the evidence.”
The district court also addressed the actions of the school district’s supervisor for child welfare and attendance, Mr. Anderson, who also recommended expulsion after the informal hearing. “[T]o listen to Mr. Anderson was unnerving because Mr. Anderson did nothing but determine that the whiskey bottle had broken — had fallen out of the backpack and broken. He exercised no discretion.... And it was just unnerving to hear him sit in the witness chair and respond to a hypothetical where drugs, for example, might be planted on a student and to hear him say essentially that student is expelled.” The district court found that while Mr. Hite had acted intentionally, Mr. Anderson was “at least grossly negligent.” Mr. Anderson never Reven considered the possibility that Justin should not be expelled, although neither expulsion nor any other penalty was required for Justin under the circumstances where Andrew had taken responsibility and demonstrated that Justin was unaware of the whiskey bottle in the backpack.
The district court concluded that it had “no problem at all finding liability” and that if punitive damages were allowed the district court might have awarded more than $50,000 because Justin “was not treated appropriately or fairly.”
The School Board appealed. By vote of 3-2, the court of appeal affirmed on both liability and damages. The majority reviewed liability under the duty/risk analy *298 sis for negligence. The court of appeal found the School Board owed a duty to Justin to ensure that the board’s policies were applied correctly. The School Board had discretion to fashion a punishment appropriate to the situation but refused to exercise that discretion. The School Board breached this duty and instead predetermined that if it were shown that Justin had whiskey on campus, regardless of how or why, then Justin would be expelled.
The court of appeal also found that the School Board owed a duty to ensure that the fact finding was thorough and fair. This duty was breached and the whole student disciplinary process was tainted by Mr. Hite’s failure to inform later decision makers of Andrew’s confession to having placed the whiskey in Justin’s backpack without Justin’s knowledge. Moreover, the disciplinary process was tainted by Mr. Hite’s decision to refuse to allow Andrew to testify at Justin’s informal disciplinary hearing.
The court of appeal found that causation was established by the testimony of Ms. Atkins, the director of the School Board’s Attendance and Census Department. Ms. Atkins testified at trial that if Mr. Hite had provided all available information to |7later decision makers during the disciplinary process, Justin would not have been expelled.
Finally, as to damages, the court of appeal noted that “[a]s a result of his expulsion, Justin was not afforded the opportunity to participate in any of the age-old ‘senior year’ events with his classmates, including prom and graduation.” Noting also that a district court has wide discretion in awarding damages, the majority found no abuse of discretion in the award of $50,000.
Two judges of the court of appeal would have granted the School Board’s request for a rehearing. Judge Caraway commented: “Regardless of the actions of Marvin Hite or Larry Anderson in reaching their disciplinary conclusions regarding Justin Christy, the discipline imposed was properly appealed through the school system pursuant to the statutory framework so that the punishment eventually became the product of a decision of the elected members of the school board.” Christy v. McCalla, 45,754 (La.App. 2 Cir. 12/15/10), 53 So.3d 689, 703 (on reh’g; Caraway, J. dissenting).
The School Board applied for a writ of review, and this court decided to consider the matter. See Christy v. McCalla, 11-0366 (La.6/17/11), 63 So.3d 1042.
DISCUSSION
The School Board makes two procedural arguments for reversing the judgment of the courts below. The School Board argues that Justin cannot recover in tort because the School Board is afforded quasi-judicial immunity from tort liability and that Justin is barred from tort recovery for his school expulsion because he did not appeal to the district court for school reinstatement as provided by La. R.S. 17:416(C)(5).[5] We pretermit these two procedural arguments because we find the |sSchool Board prevails under a third argument — we agree with the School Board that there is no merit to the claim that Justin should recover for being disciplined in connection with the bottle of whiskey he brought to school. More specifically, as discussed below, Justin failed to carry his burden of proving that the School Board denied him due process in rejecting his version of events and disciplining him.
*299 The School Board does not dispute that Louisiana law allows for an award of tort damages for a wrongful expulsion and/or for denying a student due process. Instead, the School Board argues that the lower courts erroneously allowed Justin to recover in tort by overlooking the legal cause of Justin’s expulsion and by finding a due process violation where there was none. Although the School Board does not dispute the availability of tort recovery, a brief review of tort and public education law is nevertheless helpful in evaluating the merits of the School Board’s arguments.
A tort remedy is broadly available under La. C.C. art. 2315(A) (“Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”). See also Smith v. Southern Farm Bureau Cas. Ins. Co., 247 La. 695, 174 So.2d 122, 125 (1965) (“The general tenor of Article 2315, creating a cause of action in favor of injured parties against those by whose fault the injury happened, makes that article universal in its operation unless a specific exception is established by law.”).
Louisiana courts have adopted a duty-risk analysis in determining whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care; (2) the defendant failed to conform his or her conduct to the appropriate standard of care; (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries; (4) the defendant’s substandard conduct | flwas a legal cause of the plaintiffs injuries; and (5) actual damages. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217, p. 6 (La.4/3/02), 816 So.2d 270, 275-76. In reviewing the factual findings of a trial court, we are limited by the manifest error rule. Fontenot v. Patterson Ins., 09-0669, p. 8 (La.10/20/09), 23 So.3d 259, 267, citing Hill v. Morehouse Parish Police Jury, 95-1100, p. 4 (La.1/16/96), 666 So.2d 612, 615.
Louisiana has established a public system of education and requires “[e]very parent, tutor, or other person residing within the state of Louisiana having control or charge of any child from that child’s seventh birthday until his eighteenth birthday [to] send such child to a public or private day school, unless the child graduates from high school prior to his eighteenth birthday.” See La. R.S. 17:221(A)(1). This public education system is “perhaps the most important function of state and local governments.” Goss v. Lopez, 419 U.S. 565, 576, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), quoting Brown v. Bd. of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). A child has an interest, rooted in the constitution, “in not being stigmatized by suspension” or expulsion. See Swindle v. Livingston Parish Sch. Bd., 655 F.3d 386, 393 (5th Cir.9/8/11). The school system, therefore, has a duty under the Due Process Clause of the federal constitution to not arbitrarily suspend or expel a child. Id. “ ‘Where a person’s good name, reputation, honor, or integrity is at stake because of what the government is doing to him,’ the minimal requirements of the Clause must be satisfied.” Swindle, 655 F.3d at 393, quoting Goss, 419 U.S. at 574, 95 S.Ct. 729. Louisiana law likewise requires due process. See La. Const, art. I, § 2.[6]
|inViolations by a school system of constitutional standards can give rise to *300 damages under federal law, specifically 42 U.S.C. § 1983. See Swindle, 655 F.3d at 399 (denying defendants’ summary judgment in a section 1983 action for claim that a student, after being expelled for smoking marijuana off of school property while attending a school dance, “was provided neither due process notice nor an opportunity to be heard regarding the denial of her right to alternative education.”). Analogously, this court has ruled that damages may be available for civil rights claims under the state constitution. See Moresi v. State, Dept, of Wildlife & Fisheries, 567 So.2d 1081, 1093 (La.1990) (analyzing hunters’ claims of unreasonable search and seizure, a plurality of this court answered affirmatively the question of whether plaintiffs could recover damages for violations of their rights under the state constitution, explaining that “[historically, damages have been regarded as the appropriate remedy for an invasion of a person’s interests in liberty or property.”). Recently, reviewing Louisiana’s statutory scheme to provide an expelled student with an education at an alternative school, our colleagues on the U.S. Fifth Circuit “conclude[d] that Louisiana’s statutory scheme provided [a student] an entitlement to receive alternative education during her expulsion, ie., [the student] had a property interest in continued alternative education of which she could not be deprived without due process.” Swindle, 655 F.3d at 395.
Against this legal background, and noting that the School Board does not dispute the existence of a duty,[7] before turning to what is disputed in this case, we |nbriefly observe that the record establishes the duty components for tort recovery. See S.J. v. Lafayette Parish School Bd., 09-2195 (La.7/6/10), 41 So.3d 1119, 1125 (noting recovery against a school board must be premised on the existence of a duty and the risk of unreasonable injury being foreseeable). Specifically, the constitutional requirements already cited imposed a duty on the School Board to refrain from arbitrarily suspending or expelling Justin without affording him due process, and it was foreseeable that Justin would be “stigmatized” by breaching this duty in imposing a wrongful suspension or expulsion. See Swindle, 655 F.3d at 393, citing Goss, 419 U.S. at 576, 95 S.Ct. 729 (recognizing “state laws ... created a liberty interest in not being stigmatized by suspension.”). Indeed, Justin presented evidence that he went from being in senior honors classes at Captain Shreve to being placed in an alternative school where no honors classes were available. Moreover, testimony established that for the tests Justin missed at Captain Shreve before he was formally assigned to an alternative school, Justin would receive a grade of “F” on each if he ever returned to Captain Shreve.
Causation is the element of the tort claim which the School Board argues Justin cannot establish. The School Board *301 essentially advances two arguments: 1) there is no due process violation because the School Board rendered all process due; and 2) the court of appeal “disregarded] the ability of a school board to correct the errors of its employees (or to determine those errors to have been harmless).” Because each of these arguments seeks in some way to negate the causation element of a tort by pointing to the fact that the School Board conducted a full disciplinary hearing, our analysis below also focuses on the effect of the School Board’s hearing.
112The School Board correctly points out that by law, school personnel cannot expel a student. Under La. R.S. 17:416, the process to expel a student for contraband has two or three main procedural steps, and school personnel are directly empowered to undertake only the first step. In the first step, under paragraph (A)(3)(a), “[a] school principal may suspend from school ... any pupil who” commits any one of certain enumerated offenses, including “possess[ing] alcoholic beverages.” See La. R.S. 17:416(A)(3)(a)(vi). As a practical matter, because the principal is empowered to suspend a student, a suspension may occur the same day as the student’s commission of a “serious offense.” See La. R.S. 17:416(A)(3)(a)(xvii).[8] However, to actually expel a student requires a second step, which under paragraph (C)(1) involves a hearing conducted by the superintendent or the superintendent’s designee to determine the facts of the case and make a finding of whether or not the student is guilty of conduct warranting a recommendation of expulsion, after which the “the superintendent, or his designate, shall determine whether such student shall be expelled from the school system or if other corrective or disciplinary action shall be taken.” Then, if a parent or tutor wishes to dispute the decision made at the superintendent’s level, a third step provides for review by the school board. According to paragraph (C)(4):
The parent or tutor of the pupil may, within five days after the decision is rendered, request the city or parish school board to review the findings of the superintendent or his designee at a time set by the school board; otherwise the decision of the superintendent shall be final. If requested, as herein provided, and after reviewing the findings of the superintendent or his designee, the school board may affirm, modify, or reverse the action previously taken.
11sThe trial record shows that Justin attempted to prove causation by focusing on the first procedural step, that is, Justin presented evidence to show that school personnel deprived him of due process. The school’s disciplinary administrator, Mr. Hite, testified about his handling of the investigation of the whiskey-bottle incident. When questioned at trial about how he investigated the incident in light of Andrew Heacock promptly coming forward to take responsibility for the whiskey bottle, Mr. Hite testified, “I should have called Heacock. I didn’t call him.”
Justin obtained other admissions of improper handling of his disciplinary case shortly after the whiskey bottle broke on the floor. Mr. Anderson, the school district’s supervisor for child welfare and attendance, testified that he felt he had sufficient information to make a disciplinary recommendation and he did not need to *302 hear from Andrew Heacock. Thus, at the informal hearing on October 10, 2003, four days after the incident, Mr. Anderson actually did not call on or otherwise gather any information whatsoever from Andrew about the classroom incident. Instead, considering Justin’s version of events, Mr. Anderson rejected the claim that Andrew was responsible for the whiskey bottle being placed in the backpack and recommended that Justin be expelled.
Although Justin points to a less-than-exemplary effort by school administrators to consider all available evidence of the whiskey-bottle incident, the admissions Justin obtained at trial from the school administrators fail to advance Justin’s burden of proof under the law. Notably, the evidence Justin adduced at trial was not directed to showing a due process deprivation by those who ultimately determined Justin’s discipline — the superintendent and the School Board. See La. R.S. 17:416(C)(1) (expulsion decision is made by superintendent or designee) and (C)(4) (expulsion decision made at the superintendent’s level is reviewable by the school board).
114Therefore, while it might be said that the school administrators did not render all process due to Justin by not considering Andrew Heacock’s explanation directly from the source (an issue we need not and do not decide because the administrators did not ultimately render the discipline), to recover in tort for a deprivation of due process for an expulsion, Justin had to prove injury that was caused by the superintendent or by the School Board. See Pinsonneault, 01-2217 at 6, 816 So.2d at 275-76. In our review of the record, we discern none.
The superintendent was required by La. R.S. 17:416(C)(1) to conduct a hearing or designate someone to conduct a healing and then make a determination. This procedure was followed. Ms. Atkins, director of the School Board’s Attendance and Census Department, convened a hearing by an appeals committee and, based on the findings adduced at the hearing, the superintendent decided to expel Justin. Due process here required not only that the statutorily-mandated hearing be held, but also that Justin have an opportunity to be heard. See Lott v. Department of Public Safety and Corrections, Office of Louisiana State Police, 98-1920, p. 7 (La.5/18/99), 734 So.2d 617, 621. Justin argues that his right to be heard was violated because at the hearing convened by Ms. Atkins (prior to the superintendent’s decision), Andrew Heacock did not testify. According to exhibits presented at trial, Justin suggested he was unaware that he could call witnesses. Even so, Justin undeniably testified at the hearing before the appellate committee about Andrew’s claim of responsibility.
If the hearing at the superintendent’s level, convened by Ms. Atkins, had been the last hearing at which discipline was imposed in this case, it may have been necessary to make a determination of whether having a hearing at which Andrew did not testify deprived Justin of due process or whether any such deprivation was | ¶ (¡harmless because Justin presented Andrew’s claim of responsibility for the whiskey-bottle incident. However, the hearing at the superintendent level was not the last hearing at which discipline was imposed in this case. Thus, we need not decide whether Justin was injured by a deprivation of due process at the superintendent’s level of the disciplinary process.
We turn instead to the hearing before the School Board, which Justin requested pursuant to La. R.S. 17:416(C)(4). The record shows that Justin was given the opportunity at the School Board hearing to not only testify himself, but also to present *303 testimony from Andrew Heacock. The record also shows Andrew testified and claimed responsibility for the whiskey bottle being in Justin’s backpack. As for Justin’s claim of injury from being expelled without the opportunity to present Andrew’s testimony, Justin has failed to prove he suffered a deprivation of due process.
At the trial on his tort claims, Justin attempted to show not only that he had been denied the opportunity to be heard by the School Board (a contention this court has just rejected as unsupported by the evidence), but that the School Board’s decision was based on the opinion of school employees. Stated differently, Justin attempted to show that those employees who allegedly denied him due process by not hearing Andrew’s story directly from Andrew, tainted the School Board’s decision making.
However, Justin did not present any evidence to show that the School Board’s decision was in any way the product of a denial of due process. What Justin did present at trial was the testimony of a former School Board member who had served prior to Justin’s disciplinary proceeding. The former School Board member could not say that the School Board (in the executive session that he did not attend) had based its disciplinary decision on the alleged due process violations from the earlier stages |1fiof Justin’s proceeding. Specifically, when asked if he believed “there was a justifiable basis for handing out the type of discipline that Justin Christy received in this matter,” the former school board member admitted, “I’m not sure based on all of this there’s even enough information to know whether it’s justifiable or not.”
Therefore, the testimony of the former School Board member is insufficient to prove that the School Board deprived Justin of due process. In fact, in our review of the record, the only point that can be discerned about what any of the School Board members may have believed comes from Andrew Heacock. Andrew testified that it was his impression that some members of the School Board simply did not believe Justin could not have known his backpack contained a fifth-sized whiskey bottle. Such would be a reasonable conclusion, given that Andrew testified that after placing the bottle in Justin’s backpack, Andrew did not zip the backpack. Just as important is Andrew’s testimony that he thought Justin would notice the bottle of whiskey in his open backpack. Thus, from all that appears in the trial record, the School Board, by a 9-2 vote, obviously rejected Justin’s version of events, including Justin’s claim that he did not know the whiskey bottle was in his backpack.
Justin also points out that Ms. Atkins testified at trial that if her appeals committee had known school administrators did not fully hear Andrew’s claim of responsibility for the whiskey bottle, that her committee would have voted against expulsion. Ms. Atkins’ testimony proves a violation of due process, Justin argues, because the disciplinary process would have stopped at the level of Ms. Atkins’ committee and the School Board would not have had occasion to consider whether Justin should be expelled. However, the record reflects that Ms. Atkins was only one of seven disciplinary committee members. Aside from being conjectural because Ms. Atkins’ testimony reveals that her committee did not hear any testimony from 117Andrew, Ms. Atkins’ testimony does not indicate how the other six members of her committee would have voted. Under the preponderance of evidence standard applicable to Justin’s tort claim, Ms. Atkins’ testimony is insufficient to support a judg *304 ment in Justin’s favor. See Boudreaux v. American Ins. Co., 262 La. 721, 264 So.2d 621, 627 (1972) (“Probabilities, surmises, speculations, and conjectures cannot be accepted as sufficient grounds to justify a recovery to a plaintiff who is charged with the burden of proof”). Furthermore, we reject the unsupported invitation to hold that the highest level of review (the School Board) that Justin sought is somehow less reliable than a lower level (the preliminary appeals committee).
Because Justin had the burden of proof on all elements of a tort claim for wrongful discipline (see Pinsonneault, 01-2217 at 6, 816 So.2d at 275-76), one might expect Justin would have attempted to support his claim that he was unaware the bottle was in his backpack with physical evidence. The record shows that Justin did not introduce his backpack into evidence, nor did Justin adduce any significant testimony about the backpack’s contents, such as whether it was otherwise full of books. By inference from Justin’s testimony about how the bottle fell out of his backpack, it is reasonable to conclude that besides the whiskey bottle, his backpack also contained a written homework assignment and possibly some photographs from a homecoming dance. From all that appears in the record, Justin raised more questions than he answered at trial about whether he knew the backpack he carried into the classroom contained a bottle of whiskey. Thus, no deprivation of due process can be discerned stemming from a lack of an opportunity to be heard or to persuade the School Board to believe that Justin was unaware he carried a large whiskey bottle into class.
11RThe fact that the School Board’s decision was not favorable to Justin does not mean or even suggest that he was denied due process. Instead, as has already been observed, Justin received a full opportunity to present his version of events, including the testimony of Andrew Heacock, to the School Board.[9]
Justin also argues, however, that the sanction imposed by the School Board violates his rights. Specifically, Justin argues that for possessing alcohol, the School Board was only authorized to suspend him, not expel him as it did. Justin points to La. R.S. 17:416(A)(3)(a), which provides that a “school principal may suspend from school ... any pupil who ... (vi) ... possesses alcoholic beverages.” The School Board, however, notes that the statute later provides that “[a]ny student after being suspended for committing any of the offenses enumerated in this Section may be expelled, upon recommendation by the principal.” La. R.S. 17:416(B)(l)(a). Justin’s argument suggests that there is some internal contradiction within La. R.S. 17:416 for this court to resolve. We express no opinion as to whether La. R.S. 17:416 could be interpreted to different ends such that an expulsion or only a suspension is authorized for possessing alcohol. The given facts simply do not call upon this court to do so. The discipline imposed on Justin by the School Board was less than a whole semester, and for purposes of La. R.S. 17:416, any disciplinary action, regardless of how the discipline is designated, is only a true expulsion if it lasts more than a semester. See La. R.S. 17:416(A)(2)(c).[10] Thus, the penalty im *305 posed here cannot be said to have _]^9violated La. R.S. 17:416; therefore, the penalty does not show a denial of due process nor can it support a tort judgment in Justin’s favor.
In sum, we find the evidence Justin adduced at trial proves only that he lost in his effort to persuade the School Board that he was not responsible for bringing a bottle of whiskey to school in his backpack. However, losing on the merits of one’s claim does not equate to a denial of due process. To have any prospect of recovering in tort, Justin would have had to prove by a preponderance of the evidence that he was deprived of due process by the School Board. As has been shown, the School Board afforded Justin the opportunity to fully present his case, including the explanation that Andrew Heacock was fully responsible for Justin bringing the bottle of whiskey to class. Justin also brought other tort claims that do not, in a technical sense, have as an element a denial of due process. For example, Justin alleged he should recover for defamation. However, the defamation claim and the other tort claims brought by Justin are factually predicated on a denial of due process. Having found Justin failed to show a relevant deprivation of due process, we need not analyze the tort claims predicated on a denial of due process except to note that any award based on those other claims also cannot be sustained in Justin’s favor.
Finally, we observed in the record much consternation by the district court for not having a transcript or recording of the School Board’s disciplinary hearing. Because Justin did not predicate his tort claims on an insufficiency of the record and because we pretermit the School Board’s claim of quasi-judicial immunity, we do not reach the issue of what sort of evidentiary record school boards must maintain for expulsion hearings. Likewise, nothing in this opinion should be construed to dictate the types of proof required to show that a school board violated a student’s due 1 ¡^process rights in a disciplinary hearing. Under the standard of review applicable to this case, our task is complete once we observe, as we have here, there is an absence of proof to show the School Board violated the student’s due process rights.
DECREE
For the foregoing reasons, the judgment of the district court is reversed.
REVERSED.
JOHNSON, Justice, dissents for reasons assigned by KNOLL, Justice.
KNOLL, Justice, dissents and assigns reasons.

. A representative bottle of a brand known as “Kentucky Deluxe" is part of the record.

. On December 18, 2003, the city prosecutor declined to pursue the criminal charges stemming from Justin’s arrest. Referencing a letter from Andrew taking responsibility for the whiskey-bottle incident, tire city prosecutor requested and obtained a dismissal of the criminal proceedings.

. Citations to and quotations of La. R.S. 17:416 refer to the version in effect during the
*297 disciplinary proceedings in the year 2003. La. R.S. 17:416(C)(5) provides:
The parent or tutor of the pupil may, within ten days, appeal to the district court for the parish in which the student’s school is located, an adverse ruling of the school board in upholding the action of the superintendent or his designee. The court may reverse or revise the ruling of the school board upon a finding that the ruling of the board was based on an absence of any relevant evidence in support thereof.

. Having reached the age of majority, Justin was substituted as a plaintiff.

. Reproduced, supra at n. 1.

. The extent to which the state and federal constitutions may differ in their requirements for due process is not presented as an issue for us to decide in this case.

. To its credit, the School Board does not dispute that approach taken by Mr. Hite and Mr. Anderson during the early phases of Justin's disciplinary matter was not exemplary. We also share in the concern expressed by the district court regarding testimony from school employees in response to hypothetical questions that an unsuspecting student, who is framed by a "thug” planting drugs on that student, would nevertheless face expulsion merely because the drugs were in the student's possession. Such a finding would offend our sense of justice and is unsupported by any rules or regulations. However, those are not the facts of this case, but a hypothetical situation, and we confine our review of this case to the operative facts. See Cat's Meow, Inc. v. City of New Orleans, Dept. of Finance, 98-0601 (La.10/20/98), 720 So.2d 1186, 1193 ("The jurisprudence of this Court is well settled that courts will not decide abstract, hypothetical or moot controversies, or render advisory opinions with respect to such controversies.”).

. The procedure for imposing a suspension is described in further detail in La. R.S. 17:416(A) (3) (b), and includes a requirement for the principal or the principal’s designee to "advise the pupil in question of the particular misconduct of which he is accused as well as the basis for such accusation, and the pupil shall be given an opportunity at that time to explain his version of the facts to the school principal or his designee.”

. See Lott, 98-1920 at p. 7, 734 So.2d at 621 ("Our state may determine the process by which legal rights are asserted and enforced so long as a party receives due notice and an opportunity to be heard.").

. The applicable version of La. R.S. 17:416(A)(2)(c) provided, in pertinent part: "Unless otherwise defined as a permanent expulsion and except as otherwise provided by Paragraph B(2) of this Section, an expulsion shall be defined as a removal from all *305 regular school settings for a period of not less than one school semester.” Here, Justin was removed from Captain Shreve on the date of the incident, October 6, 2003, and the School Board’s expulsion period ended on December 19, 2003, which was less than a full semester from the date Justin was removed from Captain Shreve. Because the period was less than a semester, the sanction did not meet the statutory definition of expulsion.